UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MATTHEW R. HAKODA | ] | |
|---|---|---|
| Petitioner, | ] | |
| | ] | |
| v. | ] | No. 3:11-0937 |
| | ] | Judge Campbell |
| DAVID MILLS, WARDEN | ] | |
| Respondent. | ] | |

**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against David Mills, Warden of the facility, seeking a writ of habeas corpus.

**A. Background**

In April, 2005, a jury in Davidson County found the petitioner guilty of three counts of solicitation to commit first degree murder. Docket Entry No.24-1 at pg.58. For these crimes, he received an aggregate sentence of twenty nine (29) years in prison. *Id.* at pgs.64-66.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. Docket Entry No.23-1. There was no timely application for further review filed with the Tennessee Supreme Court.

1

On November 5, 2007, the petitioner filed a *pro se* petition for post-conviction relief in the Criminal Court of Davidson County. Docket Entry No.24-7 at pgs.26-38. Counsel was appointed and, by agreed order, the petitioner was allowed to seek additional direct review of his convictions in the Tennessee Supreme Court. Docket Entry No.24-10 at pg.9. The post-conviction proceeding was stayed pending a final disposition of the delayed appeal.

In October, 2008, the Tennessee Supreme Court denied petitioner's application for discretionary review. Docket Entry No.23-2. The post-conviction proceeding was re-opened and, following an amendment of the petition and an evidentiary hearing, the trial court denied the petitioner's request for post-conviction relief. Docket Entry No.24-7 at pgs.88-93. The Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief, Docket Entry No.23-3, and the Tennessee Supreme Court declined petitioner's invitation to further review his petition. Docket Entry No.23-4.

**B. Procedural History**

On October 3, 2011, the petitioner initiated this action with the *pro se* filing of a petition for writ of habeas corpus (Docket Entry No.1). The petition, liberally construed, asserts two primary claims for relief. More specifically, it is claimed that :

> 1) the petitioner was denied the effective assistance of counsel when his attorney
>    a) failed to adequately investigate the facts of the case;

2

      b) did not adequately prepare for trial;
      c) neglected to demonstrate "how the bulk of the testimony was inconsistent with the State's version of the merits";
      d) failed to object to the State's opening statement;
      e) did not deliver an effective opening statement;
      f) failed to object "to the admission of specific fragments of taped conversation between the Petitioner and his mother";
      g) neglected to consult with a fingerprint expert;
      h) did not adequately cross examine the State's fingerprint expert;
      i) failed to adequately prepare for and challenge the testimony of Joseph Chamberlain;
      j) neglected to prepare for the testimony of Deborah Keller by listening to her taped conversations with the petitioner;
      k) failed to argue lack of mens rea as a defense;
      l) did not deliver an effective closing argument;
      m) failed to adequately challenge the sentences at the sentencing hearing;
      n) neglected to preserve sentencing issues for appeal; and
      o) the cumulative effect of these errors served to deprive the petitioner of the effective assistance of counsel.[1]

    2) it was improper to impose consecutive sentences upon the petitioner.

Upon receipt of the petition, the Court examined it and concluded that the petitioner had stated a colorable claim for relief. Accordingly, by an order (Docket Entry No.14) entered

---

[1] The petitioner was originally appointed Katie Weiss, an Assistant Public Defender for Davidson County, to represent him. However, the petitioner later retained Eileen Parrish, a member of the Davidson County Bar, to represent him at trial and on direct appeal. Docket Entry No.1 at pg.5.

3

January 3, 2012, the respondent was directed to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - - § 2254 Cases.

Presently pending before the Court are respondent's Answer (Docket Entry No.23) and the petitioner's Reply (Docket Entry No.26) to the Answer. Having carefully considered the petition, respondent's Answer, petitioner's Reply to the Answer, and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### C. Analysis of the Claims

**1) Procedurally Defaulted Claim**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. Cohen v. Tate, 779 F.2d 1181, 1184 (6th Cir.1985).While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.

Granberry v. Greer, 107 S.Ct. 1671, 1674-1675 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to the state courts. Rose v. Lundy, 102 S.Ct. 1198, 1205 (1982). A claim has been fairly presented when the petitioner has raised both the factual and legal basis for his federal claim in the state courts. Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006). Once his federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Wilson v. Mitchell, 498 F.3d 491, 498-99 (6th Cir. 2007).[2]

The petitioner alleges that it was improper for the trial judge to run his sentences consecutively (Claim No.2). This claim was never raised in the state courts for consideration. *See* Docket Entry No.27-1 (direct appeal); Docket Entry No.24-10 (post-conviction). Unfortunately, at this late date, state court remedies for this claim are no longer available. Tenn. Code Ann. § 40-30-102(a) and (c). As a consequence, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to the sentencing claim. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred

---

[2] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

5

under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim via procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of a federal constitutional issue forfeits the right to federal review of that issue, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation. <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. <u>United States v. Frady</u>, 456 U.S. 152, 170-72 (1982).

The petitioner has alleged that his attorney was ineffective

for failing to preserve certain sentencing issues for appeal. Such a failure could constitute cause for the petitioner's procedural default of this claim. Edwards v. Carpenter, 529 U.S. 446 (2000). However, counsel's ineffectiveness was predicated upon her failure to preserve a Blakely claim for appeal, not the imposition of consecutive sentences. Docket Entry No.1 at pgs.20-22. In any event, the petitioner has failed to demonstrate why his sentences should not have been run consecutively. Thus, in the absence of a showing of prejudice, the petitioner's procedural default of this claim is unexcused. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the claim was not raised in the state appellate court for review).

2) **Fully Exhausted Claims**

The petitioner's remaining claims, i.e., that counsel had been ineffective (Claim No.1a-o), were fully exhausted on the merits in the state courts.

When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United

7

States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 529 U.S. 389.

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Mallett v. United States, 334 F.3d 491, 497 (6th Cir.

8

2003).

## A) Trial Preparation

The petitioner was sent to the Davidson County Correctional Work Center to serve a twenty (20) day sentence for violating an order of protection. Docket Entry No.1 at pg.5. At the time, the petitioner's wife had filed for a divorce.

While there, the petitioner approached another inmate, Joseph Chamberlain, and attempted to enlist his aid in the murder of the petitioner's wife and stepchildren. Docket Entry No.24-2 at pg.111. Chamberlain told the petitioner that he would need some personal information about the wife and stepchildren in order to locate and identify them. *Id.* at pg.116. The petitioner supplied Chamberlain with a note containing the requested information.

Chamberlain reported the incident to his counselor at the Correctional Work Center. Officials began an investigation to determine whether the petitioner was truly planning to solicit the murder of his family.

The investigation included a review of the petitioner's recorded telephone calls at the Correctional Work Center. Of particular interest to the investigators were three calls made by the petitioner to his mother during which, in what was believed to be coded conversations, they discussed the planned murders. The police recovered a handgun during a search of the petitioner's residence, Docket Entry No.24-3 at pg.71, and found that he was a

9

suspect in an arson that occurred at the wife's home. *Id.* at pg.72.

The petitioner alleges in general terms that counsel was ineffective in her preparation for trial (Claim No.1a and 1b). More specifically, though, he claims that counsel was ineffective for not consulting with a forensic expert (Claim No.1g), and for failing to properly prepare for the testimony of the petitioner's mother, Deborah Keller (Claim No.1j).

At the post-conviction evidentiary hearing, the petitioner acknowledged that he and counsel "met several times, to go over stuff." Docket Entry No.24-8 at pg.8. From these conversations, a defense strategy was formulated to explain the petitioner's actions, i.e., that the petitioner approached Joseph Chamberlain to find a private investigator who would help him with his divorce. The note given to Chamberlain contained information about the wife and stepchildren that a private investigator would need to track their movements. *Id.* at pg.49.

Counsel filed pre-trial motions to exclude any testimony regarding petitioner's prior bad acts, a pending aggravated arson charge against the petitioner, the telephone conversations between the petitioner and his mother, and certain physical evidence. Docket Entry No.24-1 at pgs. 42-51. In addition, counsel filed a motion for a continuance, seeking more time to review the petitioner's taped telephone conversations. *Id.* at pgs.38-39. The petitioner did not provide counsel with the names of any inmates

who might be able to corroborate his version of the facts. Docket Entry No.24-8 at pg.22.

The prosecution called a fingerprint expert who testified that the petitioner's fingerprints were found on the note given to Joseph Chamberlain. Docket Entry No.24-3 at pg.59. The petitioner believes that counsel was ineffective for failing to obtain the services of a fingerprint expert to rebut this witness' testimony, even though he later admitted that such an expert was not needed because the authorship of the note given to Joseph Chamberlain was never in dispute. Docket Entry No.24-8 at pgs.25-26. On post-conviction appeal, the state appellate court found that counsel had not been deficient in this regard. Docket Entry No.23-3 at pg.8. That ruling is neither contrary to nor an unreasonable application of federal law. Accordingly, this claim has no merit.

The petitioner also contends that counsel failed to adequately prepare for the testimony of his mother, Deborah Keller, as it related to the taped recordings of their telephone conversations. More specifically, the petitioner believes that counsel's failure to review the entire 40 hours of taped conversations, rather than just the excerpts offered by the prosecution, in some way adversely affected counsel's representation.

At the post-conviction evidentiary hearing, petitioner testified that he had an opportunity to discuss with counsel the transcripts of those conversations that the prosecution intended to

11

introduce. Docket Entry No.24-8 at pg.39. Counsel met with Deborah Keller as well and discussed the transcripts with her. *Id.* at pg.57. At trial, the witness was given an opportunity to provide context for the taped excerpts. The petitioner offered nothing to suggest the existence of exculpatory information in the unredacted portions of the taped conversations. As a consequence, the state courts determined that the petitioner had not been prejudiced by counsel's failure to review the entire 40 hours of taped conversations. Docket Entry No.23-3 at pg.8. Upon review of the record, this Court agrees with that assessment.

Counsel met the petitioner and developed a defense strategy. Witnesses were interviewed and pretrial motions were filed in support of the petitioner's cause. The petitioner has failed to demonstrate that counsel had been ineffective in her trial preparation. Therefore, the state courts properly found that those claims (Claim No.1a-b, 1g and 1j) related to counsel's failure to adequately prepare for trial lacked merit.

### B) Opening Statements

In her opening statement, the prosecutor mentioned that the petitioner was "suspected of burning his wife's house down." Docket Entry No.24-2 at pg.92. The petitioner argues that counsel was ineffective for neither objecting to the statement nor seeking a curative instruction (Claim No.1d).

On direct appeal, the Tennessee Court of Criminal Appeals held

that the prosecutor's reference to the petitioner being a suspect in an arson case was improper. Docket Entry No.23-1 at pg.8. However, the error was deemed to be harmless. In this instance, counsel did attempt unsuccessfully prior to trial to suppress any mention of the arson charge. Docket Entry No.24-1 at pgs.44-45. And while she did not seek a curative instruction, the jury was in fact later cautioned to ignore proof of other crimes. Docket Entry No.24-3 at pgs.120-121. It appears, therefore, that the state court's rejection of this claim did not offend federal law. Docket Entry No.23-3 at pg.8.

It is also claimed that counsel should be faulted for failing to deliver a more effective opening statement (Claim No.1e). In her opening statement, Docket Entry No.24-2 at pgs.93-95, counsel attacked the prosecution's case by stating that the police had failed to properly investigate the allegations and that they had jumped to unfounded conclusions based upon the statement of a single witness. *Id.* at pg.93. She set forth the petitioner's defense - that the petitioner had merely been attempting to obtain the services of a private investigator who could assist him with his divorce. *Id.* at pg.95. In addition, counsel asked the jury to question the veracity of the state's key witness, Joseph Chamberlain. *Id.* at pg.94. Counsel could have given an opening statement that more fully explained the elements of the case and the petitioner's position. Nevertheless, the state courts found

13

that counsel had acted well within her discretion as to the content of the opening statement. In addition, the state courts held that the petitioner had failed to show that a different opening statement would have led to a different result at trial. Docket Entry No.23-3 at pg.8. The Court finds that this ruling is not contrary to federal law. As a consequence, this claim has no merit.

### C) Other Trial Deficiencies

The petitioner alleges that his attorney committed other errors during the course of the trial. These errors include a failure to object "to the admission of specific fragments of taped conversation between the Petitioner and his mother" (Claim No.1f), an inadequate cross examination of the state's expert witness (Claim No.1h), and the failure to effectively challenge the testimony of Joseph Chamberlain (Claim No.1i).

Prior to trial, counsel filed a motion in limine seeking to suppress the taped telephone conversations between the petitioner and his mother. Docket Entry No.24-1 at pgs.46-47. The motion was denied. *Id.* at pgs.54-55. In testimony given at the post-conviction evidentiary hearing, the petitioner acknowledged that his attorney had objected to the introduction of the taped conversations. Docket Entry No.24-8 at pg.10. In light of this admission, the petitioner has failed to show that counsel had been deficient in that regard.

The petitioner has also asserted that counsel was deficient for failing to adequately cross examine the state's fingerprint

14

expert. However, as noted above, the petitioner did admit that the evidence given by that witness was never in dispute. Docket Entry No.24-8 at pgs.25-26. As a result, the petitioner is unable to demonstrate any prejudice arising from counsel's cross examination of the state's fingerprint expert. The state courts' denial of this claim, therefore, was consistent with federal law.

Joseph Chamberlain provided the only direct evidence of an attempt by the petitioner to solicit the murder of his wife and stepchildren. The record shows that counsel spent a good deal of time cross examining him about the inconsistencies in the statements he gave to the police, made at the preliminary hearing, and testified to at trial. Docket Entry No.24-3 at pgs.11-27. At the post-conviction evidentiary hearing, the petitioner acknowledged that counsel had questioned Joseph Chamberlain about the inconsistencies in his testimony. Docket Entry No.24-8 at pgs.29-30.

By questioning this witness about his inconsistent statements, counsel raised the issue of his veracity. Moreover, through this witness, counsel was able to emphasize for the jury the fact that no money was ever discussed or changed hands and that the petitioner may have been wavering in his desire to solicit the murders. The state courts found that counsel had not been ineffective during her cross examination of Joseph Chamberlain. Docket Entry No.23-3 at pg.9. The Court agrees with this ruling and

15

finds no merit in this claim.

### D) Closing Argument

The petitioner contends that counsel was deficient for failing to deliver an effective closing argument (Claim No.1L). More specifically, he asserts that counsel did not demonstrate "how the bulk of the testimony was inconsistent with the State's version of the events" (Claim No.1c) and that counsel neglected to argue a lack of mens rea (Claim No.1k).

In her closing argument, counsel noted that the prosecution's only witness to the alleged crime was a fellow prisoner who had many inconsistencies in his testimony. Counsel reminded the jury that Joseph Chamberlain admitted to being aware that the petitioner was unemployed and could not pay an assassin with cash. She also told the jury that the police had neglected to interview any other witnesses. Counsel continuously stressed that reasonable doubt arose from Joseph Chamberlain's inconsistencies and a faulty police investigation.

Counsel repeated that there was a reasonable explanation for the note containing the personal information of the alleged targets. This explanation was that the petitioner was attempting to obtain the services of a private investigator and not an assassin, and thus lacked the mens rea to commit the crimes. She further asked the jury to consider that neither the note nor the taped telephone excerpts ever mentioned a plot to murder the petitioner's

wife and stepchildren. Docket Entry No.24-5 at pgs.18-32.

The state courts observed that a defense attorney is entitled to a great deal of deference with respect a closing argument. In that regard, the Tennessee Court of Criminal Appeals found that counsel's closing argument was well within the reasonable standards of representation. Docket Entry No.23-3 at pg.10. Having reviewed the record, the Court agrees that counsel's closing argument was not defective in any way, even though it did not sway the day for the petitioner. Consequently, petitioner's claims related to the closing argument will not support an award of habeas corpus relief.

**E) Sentencing Issues**

The petitioner believes that counsel was ineffective for failing to question the application of certain enhancement factors at his sentencing hearing (Claim No.1m). In addition, he claims that the inappropriate application of enhancement factors, more commonly known as a <u>Blakely</u> claim, should have been preserved by counsel for appellate review (Claim No.1n).

The constitutional guarantee of a jury trial proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by the jury or admitted by the defendant. <u>Apprendi v. New Jersey</u>, 530 U.S. 466,490 (2000). In 2004, the Supreme Court defined what was meant by the "statutory maximum". The relevant statutory maximum is not the maximum sentence a judge

17

may impose after finding additional facts, but rather the maximum he may impose without any additional findings. <u>Blakely v. Washington</u>, 542 U.S. 296,303-04 (2004).

Following <u>Blakely</u>, the Tennessee Supreme Court issued an opinion concluding that the Tennessee sentencing scheme did not violate a defendant's Sixth Amendment rights. *See* <u>State v. Gomez</u>, 163 S.W.3d 632 (Tenn.2005)(*Gomez I*). This remained the law in Tennessee until 2007, when the Tennessee Supreme Court held in <u>State v. Gomez</u>, 239 S.W.3d 733 (Tenn. 2007)(*Gomez II*) that a trial court's enhancement of a sentence on the basis of judicially determined facts other than the defendant's prior convictions and admissions did violate a defendant's Sixth Amendment rights.

Under <u>Blakely</u>, the petitioner may have received a sentence that was constitutionally offensive. Nevertheless, at the time of the plaintiff's sentencing (May, 2005) and appeal, it was the law in this State that the Tennessee sentencing scheme did not offend <u>Blakely</u>. The state courts held that counsel was not ineffective for failing to anticipate a change in the law as it existed at the time of petitioner's sentencing and direct appeal. Docket Entry No.23-3 at pg.10. This holding was neither contrary to nor an unreasonable application of federal law. Consequently, counsel's failure to raise a <u>Blakely</u> objection to the sentences during sentencing and on appeal did not deprive the petitioner of his Sixth Amendment right to counsel.

18

### F) Cumulative Effect of Counsel's Errors

Finally, the petitioner asserts that the cumulative effect of his attorney's errors served to deprive him of the effective assistance of counsel (Claim No.1o). Because there has been no showing that counsel was deficient in any way, this claim has no merit.

### Conclusion

The petitioner has offered no clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts. 28 U.S.C. § 2254(e)(1). Nor has the petitioner demonstrated in what way the legal rationale of the state courts runs contrary to federal law. Therefore, for the reasons stated above, the petitioner has failed to state a claim upon which habeas corpus relief can be granted.

In the absence of an actionable claim, the Court finds that the petitioner's application for habeas corpus relief has no merit. Accordingly, the application shall be denied and this action will be dismissed.

An appropriate order will be entered.

*Todd Campbell*
Todd Campbell
United States District Judge